IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 13-00667 JMS |
| Plaintiff, | |
| | ORDER GRANTING |
| vs. | DEFENDANT'S MOTION TO |
| | REDUCE SENTENCE UNDER THE |
| | FIRST STEP ACT |
| HINANO HOKU KANUI, | (COMPASSIONATE RELEASE), |
| | ECF NO. 59 |
| Defendant. | |

**ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE
UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE),
ECF NO. 59**

## I.  INTRODUCTION

Defendant Hinano Hoku Kanui ("Defendant") moves for

compassionate release from the Federal Detention Center in Honolulu, Hawaii

("FDC Honolulu"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  ECF No. 59.

Defendant argues that a reduction in his sentence is warranted on the basis of

(1) the length of his 144-month term of imprisonment, which is disproportionately

long compared to the term of imprisonment he would receive if sentenced today;

(2) his rehabilitation record while incarcerated; and (3) the hardships he has faced,

and continues to face, while incarcerated.  *See id.* at PageID # 213.  For the reasons

stated below, the Motion is GRANTED.  The court ORDERS that Defendant's

sentence be reduced to time served.

## II.  <u>BACKGROUND</u>

Defendant is 48 years old and is currently incarcerated at FDC Honolulu with a projected release date of November 9, 2023.  *See* https://www.bop.gov/inmateloc/ (last visited Sept. 6, 2022).  To date, Defendant has served approximately 110 months in custody.  *See* ECF No. 3, 39 (docket entries reflecting Defendant's arrest on June 12, 2013); ECF No. 7 (order granting the government's motion to detain Defendant without bail on June 18, 2013).

On November 4, 2013, the court accepted Defendant's guilty plea as to two counts in the Indictment, ECF No. 9:  Count 1) knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); and Count 2) knowingly receiving and possessing a modified unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  *See* ECF No. 26; *see also* Presentence Investigation Report ("PSR"), ECF No. 39 at PageID # 93.  On May 23, 2012, after the government filed a motion for downward departure, ECF No. 36, Defendant was sentenced to 144 months imprisonment, to be followed by five years of supervised release under standard and special conditions of supervision.  ECF No. 38 at PageID ## 86–88.

Defendant represents that, on April 26, 2022, he submitted a request for compassionate release to the warden at Federal Correctional Institution, Victorville Medium II ("FCI Victorville"), the facility at which Defendant was incarcerated as of April 2022.  His request was purportedly denied because "he was determined to be in transit to FDC Honolulu."  ECF No. 59-1 at PageID # 205 (citing ECF No. 59-3 at PageID ## 219–22).  It appears that Defendant made at least one more request for compassionate release from a prison warden[1] between April 27, 2022 and June 20, 2022.  *See* ECF No. 59-1 at PageID # 206; ECF No. 59-3 at PageID ## 221–23.

Defendant filed the instant Motion on July 21, 2022, more than thirty days after he allegedly submitted his requests to the warden.  ECF No. 59.  The government filed its Opposition on August 12, 2022.  ECF No. 61.  On August 22, 2022, the court held a status conference to gather more information about Defendant's proposed release plan, Defendant's good-time credits, and the court's authority to reduce Defendant's sentence below the statutorily defined mandatory minimum, should the court grant Defendant's Motion.  *See* ECF No. 63.  On August 31, 2022, the court held a second status conference on those topics, after

---

[1] The evidence submitted by Defendant indicates that he sent at least one more request for compassionate release to a "warden," but the record is unclear as to the identity of that warden or with which facility that warden was affiliated.  *See* ECF No. 59-3 at PageID ## 222–23; *see also* ECF No. 59-1 at PageID # 206.

considering the United States Probation and Pretrial Services Office's assessment. *See* ECF Nos. 65, 66.  After the August 31, 2022 hearing, the government submitted a "Supplement Submission in Connection with Defendant's Motion for Compassionate Release."  *See* ECF No. 67.  The court decides the Motion without a further hearing pursuant to Local Rule 7.1(c).

## III. <u>DISCUSSION</u>

### A.     **Legal Standard**

"Ordinarily, 'a federal court may not modify a term of imprisonment once it has been imposed.'"  *United States v. Wright*, ___ F.4th ___, 2022 WL 3712809, at *4 (9th Cir. 2022) (quoting *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021), and 18 U.S.C. § 3582(c)).  Congress created a limited exception for modifying the sentences of a federal inmate who files a motion for "compassionate release" satisfying the substantive and procedural requirements of 18 U.S.C. § 3582(c)(1)(A).  *See Wright*, 42 F.4th at 1070.  Section 3582(c)(1)(A), as amended by the First Step Act of 2018 ("FSA"), provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—

4

> (i) extraordinary and compelling reasons warrant
> such a reduction;
>
> . . . .
>
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

Accordingly, the court may reduce Defendant's sentence if:

(1) Defendant has exhausted the required administrative remedies; (2) the court

finds there are "extraordinary and compelling reasons" warranting a sentence

reduction; and (3) the court considers the § 3553(a) factors, to the extent they are

applicable, and determines that the reduction is warranted under the circumstances.

*See Keller*, 2 F.4th at 1283–84.

Although the text of § 3582(c)(1)(A) also requires a sentence

reduction to be "consistent with applicable policy statements issued by the United

States Sentencing Commission," that requirement does not apply to this case, as

there is currently no policy statement from the Sentencing Commission that is

"applicable" to compassionate-release motions filed by a defendant rather than by

the Federal Bureau of Prisons ("BOP") Director. *See Wright*, 42 F.4th at 1070–71.

Specifically, the Sentencing Commission's policy statement, United States

Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the FSA

provided criminal defendants the ability to file motions for compassionate release

on their own behalf.  *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021)

(per curiam).  And the Sentencing Commission has not amended the Guidelines

post-FSA.  *Id.* at 800 n.1.  This court is thus empowered to consider any

extraordinary and compelling reason that warrants a sentence reduction.  *See id.* at

801–02.  In making this determination, "[t]he Sentencing Commission's statements

in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions

filed by a defendant, but they are not binding."  *Aruda*, 993 F.3d at 802.

## B.   Exhaustion of Administrative Remedies

To satisfy § 3582(c)(1)(A)'s exhaustion requirement, a defendant

must submit a request to the BOP (often, the prison warden) that explains the basis

for the relief sought and provides a proposed release plan.  *See* 28 C.F.R.

§ 571.61(a)(1)–(2);[2] *see also United States v. McLean*, 2022 WL 44618, at *1 (5th

Cir. Jan. 5, 2022) (per curiam); *United States v. Burdette*, 2020 WL 6375535, at *2

(E.D. Mich. Oct. 30, 2020).  The exhaustion requirement in 18 U.S.C.

§ 3582(c)(1)(A) is "a mandatory claim-processing rule that must be enforced when

properly invoked."  *Keller*, 2 F.4th at 1282.  In other words, if raised by the

---

[2] More specifically, § 571.61(a) requires that, "at a minimum," a defendant's request to
the BOP include: (1) "[t]he extraordinary or compelling circumstances that the inmate believes
warrant consideration"; and (2) a proposed release plan detailing "where the inmate will reside,
how the inmate will support himself," and, if health is a basis for the request, "information on
where the inmate will receive medical treatment, and how the inmate will pay for such
treatment." 28 C.F.R. § 571.61(a)(1)–(2).

government in opposition to a motion for compassionate release, the exhaustion requirement must be enforced, but if the government does not raise the exhaustion requirement, it may be waived as a ground for opposing compassionate release. *See id.* (joining other circuits in holding that the exhaustion requirement is a claim-processing rule, not a jurisdictional threshold).

Here, "the government accepts [Defendant's] representations that he has adequately exhausted his administrative remedies and therefore does not raise that as a basis for denying the motion." ECF No. 61 at PageID # 237, n.1. Given the government's position, the court determines that Defendant has exhausted his administrative remedies for the purposes of his compassionate release motion.

## C.   Extraordinary and Compelling Reasons Warrant a Reduction of Defendant's Sentence

Defendant bears the burden of establishing extraordinary and compelling reasons warranting compassionate release. *See Wright*, 42 F.4th at 1076; *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). Defendant asserts three "extraordinary and compelling reasons" justifying compassionate release: (1) sentencing disparity; (2) rehabilitation efforts; and (3) hardships experienced while incarcerated. *See* ECF No. 59-1 at PageID # 213.

For the first reason, Defendant argues that if sentenced today, he would receive a term of imprisonment at or near the mandatory minimum of 120 months, rather than the 144-month term he received in May 2012. *Id.* at PageID

## 203–04.  The crux of Defendant's sentencing-disparity argument is that his two prior burglary convictions are no longer considered "crimes of violence" under the current version of Guideline § 4B1.2, which was updated in 2016 with *nonretroactive* changes to the "career offender" designation.  *See U.S. Sent'g Guidelines Manual* App. C, Amdt. 798 (U.S. Sent'g Comm'n 2021); *see also Concepcion v. United States*, 142 S. Ct. 2389, 2405 (2022) (Kavanaugh, J., dissenting) (describing the "*non-retroactive* 2016 Sentencing Guidelines amendment that substantially altered the career-offender guideline").  Without the career-offender designation, Defendant would not be subject to the associated increases in his total offense level and criminal history category.  *See* ECF No. 59-1 at PageID ## 202–04.  In turn, his guideline range would be greatly reduced, likely causing the court to impose a sentence well below 144 months (and near 120 months), according to Defendant.  *See* ECF No. 59-1 at PageID # 203.  Indeed, the government concedes that "[Defendant's] burglaries no longer would qualify as crimes of violence for career offender purposes under the Guidelines today."  ECF No. 61 at PageID # 238; *see also United States v. Clark*, ___ F.4th ___, 2022 WL 3500188, at *4 (6th Cir. Aug. 18, 2022) ("[T]he Commission amended the text of the Guidelines to remove burglary from the crime-of-violence definition." (citing *U.S. Sent'g Guidelines Manual* App. C, Amdt. 798 (U.S. Sent'g Comm'n 2016))).

Defendant arrives at the 120-month estimate through the following reasoning:  The base offense level for the combined group of Counts 1 and 2[3] was previously 32, *see* PSR, ECF No. 39 at PageID # 96, ¶ 25, but that base offense level was reduced to 30 in 2014 pursuant to the Sentencing Commission's Amendment 782, an intervening, retroactive change that Defendant would be eligible for absent his career offender status.  *See United States v. Pereda*, 788 F. App'x 499, 499 (9th Cir. 2019) (mem.) (citing Guideline § 1B1.10 cmt. n.1(A) and Amendment 782).  Defendant would still be subject to the two-level enhancement for possessing a dangerous weapon (modified, unregistered firearm), *see* PSR, ECF No. 39 at PageID # 96, ¶ 26, increasing his offense level from 30 to 32.  But the enhancement due to career-offender status—which had increased Defendant's offense level to a graduated level of 37, *see id.* at PageID # 97, ¶ 31—would no longer apply, leaving his offense level at 32.  And the three-level decrease for his acceptance of responsibility would still apply, *see id.*, ¶¶ 32–33, bringing his total offense level to 29.  Further, if Defendant were not designated a career offender, his criminal history category would remain at the calculated category V, instead of

---

[3] "Counts 1 and 2 are grouped together pursuant to [Guideline] § 3D1.2(c) since Count 2 embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline application for Count 1.  Pursuant to [Guideline] § 3D1.3(a), the offense level applicable to the group is the offense level determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three for the more serious of the counts comprising the group.  In this case, Count 1 provides for the higher offense level."  PSR, ECF No. 39 at PageID # 96, ¶ 23.

graduating to category VI. *See id.* at PageID # 102, ¶ 47–48. The guideline range

for a total offense level of 29, criminal history category V, is 140–175 months. *See*

*U.S. Sent'g Guidelines Manual* ch. 5, pt. A, Sentencing Table (U.S. Sent'g

Comm'n 2021). Assuming the court would depart from that 140–175 month range

in a manner similar to how it departed downward from the lower end of the 262–

327 month range applicable in 2012 (*see* PSR, ECF No. 39 at PageID # 107, ¶ 73),

including by granting and considering the government's motion for downward

departure, Defendant suspects that the court would impose a term of imprisonment

at the mandatory minimum, 120 months, if sentencing Defendant today. *See* ECF

No. 59-1 at PageID ## 202–04, 207–08.

       The court agrees with Defendant's reasoning and his conclusion that,

if sentenced today, he would receive a term of imprisonment well below 144

months. *See United States v. Kanohokula*, 572 F. Supp. 3d 895, 902 (D. Haw.

2021) (noting the court's "approximately thirty-six percent downward departure"

from the guideline range applicable at sentencing, and "[a]pplying the same

percentage departure" from the updated guideline range when calculating a

sentencing disparity for purposes of a compassionate-release motion).

Furthermore, subsequent to Defendant filing his Motion and the court holding two

status conferences on the Motion, the government filed its Supplemental

Submission in which it effectively amended its prior motion for downward

departure, ECF No. 36, by clarifying that if Defendant were sentenced today based on the 140–175 month range, the government's motion for downward departure would have been submitted under 18 U.S.C. § 3553(e), permitting the court to sentence below the 120-month mandatory minimum.  *See* ECF No. 67.

Thus, if sentenced today, Defendant would likely receive a term well below 120 months based on a commensurate downward departure from the now-applicable 140–175 month guideline range.  Specifically, if the court's prior 45% departure—i.e., the percentage difference between 144 months and the lower end of the 262–327 month range—is applied to the lower end of the now-applicable guideline range of 140–175 months, the result is an arithmetically suggested sentence of 77 months.  Although the court doubts it would sentence Defendant to that short of a sentence, the court is confident it would sentence Defendant below 120 months, very likely below 110 months—the time Defendant has already served for his convictions.  The court, therefore, finds a sentence of time served, i.e., 110 months, to be appropriate when evaluating Defendant's sentencing disparity.

Regardless of how the sentencing disparity is calculated in this case— either the strict 34-month difference[4] between the sentence imposed in 2012 and

---

[4] That 34-month difference is "strict" in the sense that it is bounded on one side by the 110 months that Defendant has already served, making it an underrepresentation of the significant intervening changes in sentencing laws affecting Defendant.

the sentence that would likely be imposed today, or the 122-month difference between the lower ends of the two guideline ranges[5]—the disparity falls within the range sufficient to constitute an extraordinary and compelling reason justifying compassionate release when considered in combination with Defendant's rehabilitation efforts and personal hardships. *See United States v. Mitsuyoshi*, 2022 WL 819436, at *5 (D. Haw. Mar. 17, 2022) (this court concluding that the disparity between defendant's post-FSA 120-month mandatory minimum and the 240-month term imposed at sentencing—when combined with defendant's rehabilitation and having served approximately 129 months in custody—constituted an extraordinary and compelling reason justifying release); *Kanohokula*, 572 F. Supp. 3d at 902–04 (this court finding extraordinary and compelling reasons where, *inter alia*, the defendant's post-FSA sentence would have been 97 months, and the defendant had served more than 121 months of his 168-month sentence); *United States v. Lawrence*, 2021 WL 859044, at *1 (E.D. Mich. Mar. 8, 2021) (holding that a disparity in guideline ranges—57 to 71 months versus 130 to 162 months—along with defendant's medical condition, justified compassionate release); *cf. United States v. Gomez*, 2021 WL 1240621, at *6–8 (D. Haw. Apr. 2, 2021) (this court holding that a sentencing disparity of 10 months and

---

[5] The guideline range applicable in 2012 was 262–327 month.  The guideline range that would apply today is 140–175 months.  The difference between the lower ends of those two ranges is 262 minus 140, i.e., 122 months.

12

defendant's medical conditions did not justify compassionate release), *aff'd*, 2022 WL 543080 (9th Cir. Feb. 23, 2022) (mem.).

With respect to rehabilitation efforts, Defendant argues that "[w]hile incarcerated, [he] . . . completed dozens of cour[ses], obtained his GED, and held gainful employment," rehabilitations efforts that favor release.  ECF No. 59-1 at PageID # 212.  The court concurs—Defendant's BOP records show that he has completed at least 40 stand-alone courses while incarcerated, in addition to completing his GED.  *See* ECF No. 59-5 at PageID ## 228–29; *see also id.* at PageID # 230 ("Inmate completed 15+ courses since last review.").  Defendant has also demonstrated rehabilitation and responsibility through work positions, including in his current role in the UNICOR program, *see id.* at PageID # 228, "a self-sustaining government corporation that provides employment and job training to BOP inmates while producing marketable goods and services," *United States v. Lemoine*, 546 F.3d 1042, 1047 n.3 (9th Cir. 2008).  *See also* ECF No. 59-5 at PageID # 230 ("Inmate works in Unicor.").  And he has demonstrated significant strides toward rehabilitation by maintaining a clean disciplinary record while incarcerated, as shown by his BOP records.  *See id.* at PageID ## 229–30; *see also* ECF No. 59-1 at PageID # 212 ("[Defendant's] programming sheets, dated in September 2021, shows no disciplinary incidents found in the six months prior.").

13

The court concludes that Defendant's rehabilitation efforts provide further significant support for compassionate release.[6]

Regarding hardships, Defendant has faced and continues to face considerable personal hardships while incarcerated.[7] His father passed away after contracting COVID-19 in 2021 while Defendant was incarcerated. *See* ECF No. 59-4 at PageID # 225. Defendant had already lost his mother much earlier in life. *See* ECF No. 59-1 at PageID # 211. Even more regrettably, Defendant's son died from a stab wound in 2018, also while Defendant was incarcerated. *See* ECF No. 59-4 at PageID # 225. On top of that, Defendant suffers from serious medical issues, including a mental health condition and physical health conditions such as diabetes and sleep apnea. *See* ECF No. 59-1 at PageID # 212 (citing ECF No. 59-4). In sum, weighing Defendant's sentencing disparity, rehabilitation efforts, and

---

[6] Courts may consider a defendant's rehabilitation efforts when determining whether there are extraordinary and compelling reasons justifying compassionate release. *See, e.g.*, *Kanohokula*, 572 F. Supp. 3d at 904; 28 U.S.C. § 994(t) ("Rehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." (emphasis added)); *see also Aruda*, 993 F.3d at 801 ("[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020))).

[7] Courts may consider a defendant's personal hardships when determining whether there are extraordinary and compelling reasons justifying compassionate release. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 577 (M.D.N.C. 2019) (granting compassionate release) ("Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances.").

personal hardships, the court concludes that there are extraordinary and compelling reasons warranting a reduction in Defendant's sentence.

The government opposes a reduction in Defendant's sentence principally because it asserts that intervening, nonretroactive changes in sentencing laws cannot be grounds for compassionate release. *See* ECF No. 61 at PageID # 237. Indeed, there is a split among courts of appeals regarding whether a sentencing disparity created by nonretroactive changes to a mandatory sentencing scheme can constitute an "extraordinary and compelling reason" to grant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Four courts of appeals say no. *See United States v. Crandall*, 25 F.4th 582, 585 (8th Cir. 2022); *United States v. Andrews*, 12 F.4th 255, 261–62 (3d Cir. 2021); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021); *United States v. Jarvis*, 999 F.3d 442, 444–45 (6th Cir. 2021). Three courts of appeals say yes. *See United States v. Ruvalcaba*, 26 F.4th 14, 24–28 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 285–87 (4th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021). Two of the "yes" courts—the First Circuit and the Tenth Circuit—clarify that sentencing disparities resulting from nonretroactive changes to sentencing laws must be "in combination" with other factors in order to constitute an extraordinary and compelling reason for early release. *See McGee*, 992 F.3d at 1048; *Ruvalcaba*, 26 F.4th at 24, 28.

The Ninth Circuit has yet to rule on this issue, but the Supreme Court's recent decision in *Concepcion* lends support for the "yes" side of the split by giving district courts "wide discretion" in considering all factors relevant to the re-evaluation of a defendant's sentence, including nonretroactive changes to sentencing laws.  *See* 142 S. Ct. at 2399–2403 ("[When raised by the parties, district courts have considered nonretroactive Guidelines amendments to help inform whether to reduce sentences at all, and if so, by how much. . . .  Nothing express or implicit in the First Step Act suggests that these courts misinterpreted the Act in considering such relevant and probative information." (citations omitted)).

This court has sided with the "yes" courts, concluding that a substantial sentencing disparity resulting from nonretroactive changes to sentencing laws can, when combined with a defendant's other "individualized circumstances," constitute extraordinary and compelling reasons justifying compassionate release.  *See United States v. Lii*, 528 F. Supp. 3d 1153, 1164–65 (D. Haw. 2021).  And in *Kanohokula*, this court held more specifically that "non-retroactive changes in law regarding 'career offender' designations can constitute extraordinary and compelling reasons to reduce sentences under [18 U.S.C.] § 3582(c)(1)(A) when considered on an individual basis."  572 F. Supp. 3d at 903.

16

Having weighed Defendant's asserted grounds for compassionate release, and having determined there are extraordinary and compelling reasons justifying compassionate release—including a significant sentencing disparity caused by changes to the career-offender designation—the court finds no reason to depart from its prior holding in *Kanohokula*. Because the court holds that Defendant has demonstrated extraordinary and compelling reasons justifying a reduction of his sentence, the court now determines whether the section 3553(a) factors are consistent with a reduction of Defendant's sentence to time served. *See Keller*, 2 F.4th at 1283–84.

## D.    Section 3553(a) Factors

As relevant to this case, the 18 U.S.C. § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"[8] (2) "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and (6) "the need to

---

[8] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  *Id.* § 3553(a).

        The facts underlying Defendant's Motion reflect that there has been just punishment and adequate deterrence in this case.  Defendant has served over three-fourths of his sentence of imprisonment.  While incarcerated, Defendant has faced significant personal hardships and medical issues, as discussed above.  Regarding the need for corrective training and to protect the public from further crimes, Defendant has made significant efforts and demonstrable progress toward rehabilitation, including completing numerous educational courses, maintaining work positions, and keeping a clean disciplinary record, as discussed above.  Moreover, having completed his GED, and having provided reasonable options for post-incarceration employment, *see* ECF No. 59-6, Defendant has vocational potential that will help prevent recidivism.

        As for Defendant's history and characteristics, the PSR discloses two instances of assaultive conduct.  First, in connection with his first burglary conviction, Defendant reportedly "broke down the screen door of his girlfriend's residence, kicked in a bedroom door, grabbed his girlfriend by the hair, and punched her in the face."  PSR, ECF No. 39 at PageID # 100, ¶ 41.  And second, in

connection with a prior harassment conviction, "the defendant's girlfriend reported [to the police] that, during an argument, the defendant punched her several times in the head/chest area of her body causing her pain." *Id.* at PageID ## 101–02, ¶ 45.

Although those instances of assaultive conduct are certainly concerning, they occurred long ago: The assaultive conduct underlying the harassment conviction was almost twenty years ago, *see id.*, and the assaultive conduct underlying the first burglary conviction was almost twenty-seven years ago, *see id.* at PageID # 100, ¶ 41. In contrast to that distant assaultive conduct, Defendant has more recently demonstrated a disciplined, non-violent demeanor, including by keeping consistent employment and a clean disciplinary record while incarcerated. *See* ECF No. 59-4 at PageID # 226 (Defendant writing that over the past nine years, "I [have] learn[ed] how to program myself by getting up at 5:30 in the morning[,] go[ing] to breakfast at 6 am, [and] then go[ing] to Unicor . . . ."). And again, Defendant has made significant efforts and demonstrable progress toward rehabilitation, further demonstrating that he is much less of a threat to the public now than he was ten years ago.

Regarding Defendant's offense conduct, Defendant was an established ounce distributor of methamphetamine. *See* PSR, ECF No. 39 at PageID ## 94–95, ¶¶ 10–17. But this places him—in the court's experience—as a mid-level distributor, at worst. Thus, considering that Defendant was not a large-scale drug

19

trafficker, and also considering the intervening changes to the career-offender designation and the fact that Defendant has served a substantial portion of his sentence,[9] the court concludes that a sentence of time served is appropriate in view of the § 3553(a) factors and the parsimony clause. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . . .").

For all the reasons discussed above, a reduction of Defendant's sentence to time served is sufficient to achieve the goals of sentencing under § 3553(a)(2).[10]

---

[9] Defendant has served 110 months out of 144 months, or roughly 76% of his sentence of imprisonment. As mentioned earlier, that completion percentage is a further factor favoring compassionate release. *See Mitsuyoshi*, 2022 WL 819436, at *5–6 (finding extraordinary and compelling reasons justifying compassionate release when, inter alia, defendant had "served a substantial portion of his sentence—more than 129 months [of his 240-month sentence]"); *Kanohokula*, 572 F. Supp. 3d at 905; *cf. United States v. Gibson*, Cr. No. 16-00746 JMS (D. Haw. June 16, 2022) (ECF No. 534) (order denying compassionate release when, inter alia, defendant still had more than half of her sentence remaining).

[10] The court has reviewed the proposed release plan and finds it sufficient under 28 C.F.R. § 571.61(a)(2). *See* ECF No. 59-6; ECF No. 64 at PageID # 243 (U.S. Probation and Pretrial Services Office's "Assessment of Defendant's Release Plan if Granted Early Release," concluding that "the release plan [is] suitable for supervision purposes should the Court grant the motion for early release").

## IV.  **CONCLUSION**

Defendant's Motion to Reduce Sentence Under the First Step Act (Compassionate Release), ECF No. 59, is GRANTED.  It is further ordered that:

1.    Defendant's sentence of incarceration is reduced to time served; and

2.    Upon release from custody, Defendant shall commence serving his five-year term of supervised release as previously imposed; and shall abide by all mandatory, standard, and special conditions as approved and ordered by the court on September 2, 2022, ECF No. 68.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 9, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Kanui*, Cr. No. 13-00667 JMS, Order Granting Defendant's Motion to Reduce Sentence Under the First Step Act (Compassionate Release), ECF No. 59